The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. However, pursuant to its authority under N.C. Gen. Stat. § 97-85, the Full Commission has modified in part and affirmed in part the Deputy Commissioner's decision and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and subsequent to the hearing on 12 November 1997, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 30 May 1995 an employment relationship existed between plaintiff-employee and defendant-employer.
3. North Carolina Farm Bureau Mutual Insurance Company is the carrier on risk.
4. Plaintiff's average weekly wage on 30 May 1995 was $267.50 per week.
5. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #2 and 2a.
6. Six photographs of the scene are admitted into evidence as Stipulated Exhibits #3a, #3b, #3c, #3d, #3e and #3f.
7. An Industrial Commission Form 19 with a police report attached is admitted into evidence as Stipulated Exhibit #4.
8. The issues to be determined are as follows: (a) whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer: (b) if so, to what benefits, if any, is plaintiff entitled, and; whether plaintiff is entitled to costs and attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
***********
 RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Douglas Jones, Dr. Beth Foil, Dr. Jacinta McElligott, Dr. Luke Curtsinger, Dr. Farshid Guilak and Leon Kazarian are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
***********
 FINDINGS OF FACT
1. On 30 May 1995, plaintiff was a 45-year old male employed by defendant-employer as a day laborer. Defendant-employer is the owner of a farm in Lenoir County along with his wife, Lynda McCoy.
2. Plaintiff was from Mexico and in 1995 was in the United States pursuant to a work visa. Plaintiff did not understand or speak English. Plaintiff's employer, Mr. McCoy did not speak Spanish. Mr. McCoy communicated and relayed instructions to plaintiff by gestures.
3. In late May 1995 defendant-employer employed plaintiff and two other workers, Tomas Hernandez Aleman, from Mexico, and Jose Martinez, from Puerto Rico. Additional workers were due to arrive at the farm the first of June in time for the summer harvest.
4. On 30 May 1995, plaintiff and Mr. McCoy worked together on the roof of a shelter attached to a tobacco barn. The roof, which was made of tin, had to be removed and replaced along with any rotten boards. Plaintiff and Mr. McCoy worked until approximately 3:00 p.m. with only an hour off for lunch.
5. By 3:00 p.m., most of the tin was off the roof and Mr. McCoy thought they had taken off all of the rotten boards. When plaintiff and Mr. McCoy removed the tin from the roof, they had dropped it along with the rotten boards on the ground. When Mr. McCoy left at approximately 3:00 p.m., he instructed plaintiff to clean up the debris around the barn and shelter. He further pointed to the roof and instructed plaintiff not to go back up on the roof, but Mr. McCoy's instructions were in English, not Spanish.
6. After Mr. McCoy left, plaintiff cleaned up most of the debris around the shelter. When Mr. McCoy had pointed to the roof and told plaintiff not to go up on it, plaintiff thought Mr. McCoy wanted him to continue removing the parts from the roof since Mr. McCoy had pointed up to it.
7. Plaintiff climbed back up the ladder onto the roof of the barn to try to finish stripping the roof. While plaintiff was on the roof, a person identified as Ramon, the brother of plaintiff's coworker Tomas Hernandez Aleman, stopped by the site. Ramon inquired about the whereabouts of his brother, Thomas, and was the last person to see plaintiff before the fall.
8. Around approximately 7:00 p.m., while working on the roof of defendant-employer's barn, plaintiff fell and hit the ground, with his head striking a steel backhoe or some other farm implement, and severely injured himself.
9. Plaintiff was not found until the following morning at approximately 7:00 a.m. by Jose Martinez. At the time plaintiff was found, he was lying not far from a steel back hoe bucket which contained stains resembling blood. A human tooth was also found at the scene near the steel back hoe bucket. Plaintiff was in and out of consciousness at the time he was found.
10. Plaintiff was transported to Pitt County Memorial Hospital by East Care helicopter where it was determined he had sustained bilateral skull fractures. The facial trauma to the bones on plaintiff's left side of his head was greater than on his right. Approximately one month after the accident, doctors also found a fractured right fibula, but the fracture was partially healed.
11. At Pitt County Memorial Hospital plaintiff came under the care of Dr. Mary Beth Foil, the admitting trauma surgeon, and Dr. Luke Curtsinger, a plastic surgeon, as well as Dr. Douglas Jones, a neurosurgeon. On 6 June 1995, plaintiff underwent plastic facial surgery, which included open reduction internal fixation of frontal, orbital, maxillary and zygoma fractures, a tracheostomy and excision of nerves left temple.
12. Additionally, while at Pitt County Memorial Hospital, plaintiff received speech therapy, physical therapy and occupational therapy. The McCoys arranged for some of plaintiff's family from Mexico to travel to the United States and the McCoys provided living quarters and jobs on the farm for these family members.
13. Plaintiff transferred out of Intensive Care on 9 June 1995 and on 15 June 1995 plaintiff was transferred to the Rehabilitation Unit of Pitt County Memorial Hospital to continue with his recovery.
14. The Lenoir County Sheriff's Department responded to the scene where plaintiff was found on 31 May 1995. Detective Kenny Barrow investigated the scene, interviewed persons there and took pictures of the scene. Detective Barrow found a broken board in the roof of the shelter structure which was above a steel backhoe bucket that had a substance resembling blood on it. Detective Barrow also observed a trail of a substance resembling blood from the backhoe area to the area in which plaintiff was found.
15. Additionally, on 31 May 1995, Mrs. McCoy and Jose Martinez looked around at the accident scene for some money plaintiff had earlier on 30 May 1995. Mr. Martinez found a NationsBank envelope in the dirt and grass around the accident scene which contained five (5) $100.00 bills. This amount matched the amount Mrs. McCoy knew plaintiff in his possession on 30 May 1995 and had intended to send to plaintiff's family in Mexico. Mrs. McCoy sent this money to plaintiff's family in Mexico while he was hospitalized.
16. At some point during plaintiff's hospital stay at Pitt Memorial Hospital, plaintiff's physicians, Drs. Jones, Foil and Curtsinger, questioned whether plaintiff had been injured in a fall or had been assaulted. Plaintiff sustained severe facial fractures but did not sustain a broken neck or any further substantial injuries except the possible broken fibula. Plaintiff's injuries were more consistent with some type of blow or assault to the face than an ordinary fall from ten to thirteen (10-13) feet. Defendants denied compensation based on plaintiff's physicians' questions about whether plaintiff's injuries could have been caused by a fall. Defendants also retained the services of a private investigator to look into the cause of the injuries.
17. Plaintiff or his family retained an attorney to represent his interests after defendant-carrier denied the claim. His former attorney, Katherine McGraw, followed up with plaintiff's physicians and showed them photographs of the scene and informed them that $500.00 cash had also been found nearby. Based on this new information, Dr. Foil sent a letter to Mrs. McGraw indicating she now believed plaintiff's injuries to have been caused by a fall. Dr. Jones, plaintiff's neurosurgeon, also signed "I agree" at the bottom of a letter from plaintiff's counsel regarding plaintiff's injuries arising from a fall. Dr. Curtsinger did not change his opinion and recommended defendants consult an expert engineer.
18. Plaintiff returned to Mexico in October or November of 1995. Just prior to returning, plaintiff did a small amount of non-strenuous work around the McCoy farm during the fall cucumber harvest in the middle of September until the middle of October 1995. This work included handing out tokens to other workers when they brought in a bucket of cucumbers.
19. In preparing this case for litigation, plaintiff's counsel consulted Farshid Guilak, Ph. D, an expert in biomechanical engineering and biodynamics. Dr. Guilak is an Assistant Professor in the Department of Surgery, Division of Orthopedic Surgery at Duke University Medical Center, with joint appointments in the Department of Biomedical Engineering and the Department of Mechanical Engineering at Duke University. In rendering an opinion in this case, Dr. Guilak reviewed plaintiff's medical records, the paramedics report, police report, photographs taken at the scene, which are a part of the record, Dr. Kazarian's report and deposition and the post-hearing depositions of Drs. Jones, Foil and Curtsinger. It is Dr. Guilak's opinion that plaintiff fell from the shelter where he was working and struck his face on the steel backhoe bucket, causing his injuries. Dr. Guilak has seen a number of accident and trauma cases where the frontal bones were broken and the neck was not injured or broken.
20. Defendants enlisted the services of Leon Kazarian, Ph.D., an expert in orthopedic biomechanics, who works as a biomechanical consultant in litigation. Dr. Kazarian based his opinions, in part, on conclusions drawn from a model constructed by his assistant. Although care was used in constructing the model, some items which surrounded the shed were missing and it was damaged during shipping. Additionally, the model was based upon the assistant's interpretation of the distance between boards and other items from the six (6) photographs taken by the Lenoir County Sheriff's Department and which were stipulated into evidence by the parties. However, these photographs were taken after EMS personnel had removed plaintiff from the scene, so it is possible that some of the items on the ground had been moved during the treatment and removal of plaintiff. Dr. Kazarian also based his opinions on a video and G. I. Joe doll.
21. It is Dr. Kazarian's opinion that had plaintiff fallen from the shed roof that he would have sustained a broken neck. Dr. Kazarian discounted a dive or fall theory due to the fact that plaintiff's most severe injuries were concentrated on his face and that plaintiff had not sustained a broken neck.
22. Greater weight is given to the opinions of Dr. Guilak and plaintiff's treating physicians Drs. Jones and Foil regarding the cause of his injuries than the opinions of Dr. Kazarian.
23. The greater weight of the evidence is that plaintiff sustained an injury by accident arising out of and in the course of his employment on 30 May 1995 when he fell from the roof upon which he was working, striking his face on a metal backhoe bucket on the ground.
24. As a result of this injury by accident, plaintiff has been unable to work or earn wages since 30 May 1995, except for the brief time in September/October at the McCoy farm when he distributed tokens. The record does not reveal what, if any, wages plaintiff may have earned for this brief period.
25. Plaintiff's cognitive and mental functions have decreased since his work-related fall on 20 May 1995. Plaintiff is in need of an evaluation of his neuro-psychological and cognitive abilities, as well as a vocational evaluation after the neurological evaluation results are available.
26. Defendants' defense in this matter was reasonable given the contradictory expert opinions and was not based upon unfounded litigiousness.
27. Plaintiff's average weekly wage on 30 May 1995 was $267.50, which yields a compensation rate of $178.34 per week.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 30 May 1995 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of his 30 May 1995 injury by accident, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate $178.34 per week for the period of 30 May 1995 through the present and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29.
3. As a result of his 30 May 1995 injury by accident, plaintiff is entitled to have defendants provide all medical treatment to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
4. As the result of his 30 May 1995 injury by accident, plaintiff would benefit from evaluations of his neuro-psychological and cognitive abilities and from a vocational evaluation after the neurological evaluation results are available. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
5. As defendants' actions in defense of this matter were reasonable and not based upon unfounded litigiousness, plaintiff is not entitled to attorney fees or costs pursuant to N.C. Gen. Stat. § 97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies in part and affirms in part the Deputy Commissioner's holding and enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $178.34 per week for the period of 30 May 1995 through the present and continuing until he returns to work or until further order of the Commission. Those sums which have accrued shall be payable in a lump sum; and all amounts payable to plaintiff shall be subject to reasonable attorney fees, approved herein.
2. A reasonable attorney fee in the amount of twenty-five percent (25%) of the lump sum awarded plaintiff is due plaintiff's counsel and shall be deducted from the lump sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be forwarded directly to plaintiff's counsel for attorney fees.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injuries for so long as such treatments tend to effect a cure, give relief or lessen plaintiff's disability.
4. Defendants shall pay the costs.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
Defendants shall arrange for plaintiff to have a neuro-psychological and cognitive ability evaluation within ninety (90) days from the filing date of this Opinion and Award. This examination shall be conducted by a qualified professional(s) at a location convenient to plaintiff. Within a reasonable following the availability of the results from this evaluation, defendants shall schedule a vocational evaluation for plaintiff to be conducted at a location convenient to plaintiff.
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER